**FILED**
2012 Aug-13  PM 02:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | Case No. 1:11-cv-8022-VEH-TMP |
| | ) | 1:08-cr-197-VEH-TMP |
| ROOSEVELT ADAMSON, JR., | ) | |
| | ) | |
| Defendant/Movant. | ) | |

<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

This cause is before the court on the defendant/movant's motion, pursuant to 28 U.S.C. § 2255, to vacate his convictions for conspiracy to possess with intent to distribute a controlled substance and using a telephone to facilitate a drug-trafficking offense.  (<u>See</u> Doc. 1 in Case No. 1:11-cv-8022-VEH-TMP and Doc. 499 in Case No. 1:08-cr-197-VEH-TMP).  He challenges his convictions, alleging that he received ineffective assistance of trial and appellate counsel.  In accordance with the usual procedures of this court, the § 2255 motion was referred to the undersigned magistrate judge for a preliminary review and recommendation.

I.  <u>Procedural History</u>

A federal grand jury indicted movant, along with twelve other people, on May 28, 2008, in connection with a drug-trafficking ring operating in the Anniston, Alabama, area.  Movant was charged in one count with conspiracy to possess with intent to distribute more than 50 grams of cocaine base and in three counts with using a communication facility to facilitate a drug-trafficking

offense.[1]  Attorney David Luker was appointed to represent him at trial.  On July 11, 2008, the government filed an information under 21 U.S.C. § 851 to notify the movant that it would seek an enhanced penalty based upon his prior 1997 conviction for unlawful possession of cocaine.  On October 8, 2008, the government filed a supplemental information, alleging that movant had a second prior drug-felony conviction, a 2001 conviction for aiding and abetting possession with intent to distribute more than 500 grams of cocaine hydrochloride.

Six days later, on October 14, 2008, a plea agreement between the movant and government was filed with the court.  It appears on the agreement, however, that movant executed it on September 22, 2008, before the supplemental § 851 information was filed by the government.  Movant pleaded guilty to all four counts against him in the indictment at a change of plea hearing on October 14, 2008.

The second page of the plea agreement informed movant of the potential maximum punishment he faced, as follows:

### I. MAXIMUM PUNISHMENT:

The Parties understand that the statutory punishment that may be imposed for the crime of Conspiracy to Possess with the intent to Distribute and to Distribute fifty (50) grams  or more of a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 841(a){l) and (b)(l){A) and Title 21, United States Code, Section 846, as charged in COUNT ONE *accompanied* by a determination that the defendant has one or more prior convictions for a felony drug offense is:

a.    **A mandatory term of LIFE imprisonment without release if the defendant has two prior convictions for a felony drug offense**; a

---

[1]  The grand jury returned a superseding indictment on July 29, 2008, but it did not change the four charges against the movant.  It added four new defendants.

        mandatory term of 20 years imprisonment if the defendant has one prior conviction for a felony drug offense; or, a mandatory term of 10 years imprisonment if the defendant does not have any convictions for a felony drug offense;

b.      A fine of not more than $8,000,000 if the defendant has at least one prior conviction for a felony drug offense; or a fine of not more than $4,000,000, if the defendant does not have any convictions for a felony drug offense;

c.      Both (a and b);

d.      Supervised release of at least 10 years if the defendant has at least one prior conviction for a felony drug offense; or supervised release of at least 5 years if the defendant does not have any convictions for a felony drug offense; and

e.      Special Assessment fee of $100 per count.

(Doc. 259 in Case No. 1:08-cr-197-VEH-TMP)(Italic in original; bolding added for emphasis).  The plea agreement also contained an extensive statement of facts, describing evidence of intercepted telephone calls between movant and a co-defendant, Maurice Kirby, in which they described "cooking up" crack cocaine and arranging a crack deal between them.  The plea agreement recited the agreement by the government to file a motion for downward departure pursuant to U.S.S.G. § 5K1.1 in the event the movant provided the government with "substantial assistance."  If he did not provide "substantial assistance," as determined by the government, the government would recommend, in pertinent part, the following sentence:

Pursuant to Rule 11(c)(1)(B), Fed.R.Crim.P., the government, **in the absence of "substantial assistance" by the defendant**, will recommend the following disposition:

a.      That defendant be awarded a three (3) level reduction in the offense level for acceptance of responsibility;

    b.      That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a period of time consistent with the low end of the advisory guidelines range, as determined by the Court the date sentence is pronounced; .... (Bolding in original).[2]

Finally, the plea agreement also contained an agreement by movant to waive his right to appeal his conviction, or to challenge it in a post-judgment § 2255 motion, except under certain narrow circumstances.  It stated:

### VI. WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF:

**In consideration  of the recommended disposition of this case, I, ROOSEVELT ADAMSON, Jr.,  hereby waive and give up my right to appeal my conviction in this case, as well as any fines, restitution, and/or  sentence the court might impose upon me.  Further I waive and give up the right to challenge any conviction or sentence imposed or the manner in which the sentence was determined in any collateral attack, including, but not limited to, a motion brought under  28 U.S.C. § 2255, subject to the following limitations:**

**The defendant  reserves the right to contest in an appeal  or post-conviction proceeding any or all of the following:**

    **a.**      **Any sentence imposed in excess of the applicable statutory maximum sentence(s);**

    **b.**      **Any sentence that constitutes an upward departure from the advisory guidelines sentencing range calculated by the court at the time  sentence is imposed.**

---

[2]  It is not clear to the court how the second option would ever make a difference to the defendant.  If he provided "substantial assistance" to the government, a § 5K1.1 motion would be filed for a downward departure below the mandatory Guidelines minimum of life in prison.  If he did not provide "substantial assistance," no § 5K1.1 motion would be filed and defendant would be subject to the mandatory minimum sentence of life without parole.  The government's "recommendation" in that circumstance of a three-level reduction in the total offense level and sentencing at the low end of the Guidelines range would be meaningless because the mandatory Guidelines minimum would still be life in prison.  The only thing that could make a difference in movant's sentence would be the government's § 5K1.1 motion.  Without it, he faced mandatory life, which was a fact known to all at the time the plea hearing occurred.

> **The defendant acknowledges that before giving up these rights, he discussed the Federal Sentencing Guidelines and their application to his case with his attorney, who explained them to his satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.**

(Bolding in original).  The movant signed immediately below this section, signifying his particular understanding and acceptance of it, in addition to the general provisions of the plea agreement.

The court conducted a plea colloquy with movant on October 14, 2008, during which the elements of the offenses were explained to him, as well as the rights he would give up with a guilty plea, the significance of the waiver of appeal and § 2255 rights, and the potential maximum sentences involved.  <u>See</u> Doc. 429 in Case No. 1:08-cr-197-VEH-TMP.  During the plea colloquy, movant acknowledged through counsel that he was aware of the supplemental § 851 information filed six days earlier.  The following exchanges occurred at the plea hearing:

> MS. DEAN: Your Honor, in exchange for the defendant's plea of guilty, the government has agreed to make several recommendations.  First, this plea agreement does contemplate cooperation by the defendant.  The government is satisfied that the defendant does know what is expected of him and is headed in that direction.  However, in the event that the defendant does not provide complete substantial assistance, the government is prepared to recommend several things.  One, that he receive a three-level acceptance of responsibility reduction; that he be incarcerated at the low end of the advisory guideline range; that he be subject to supervised release terms to be determined by the Court; that he be subject to a fine to be determined by the Court; and that he pay a special assessment fee of $400 at the time of sentencing for Count 1, Count 7, Count 8, and Count 9 of the superseding indictment that was filed into which he is entering his guilty plea today.

> [THE COURT:]  Mr. Adamson, the plea agreement states that even in the absence of substantial assistance by you, the government will recommend a three-level reduction for your acceptance of responsibility by pleading guilty today, and that you be sentenced at this low end of the advisory guideline range.

Mr. Luker, does the written plea agreement that is on the table in front of you and your client contain everything that you aware of that your client is relying upon by way of a plea bargain or plea agreement?

MR. LUKER: Yes, ma'am, it does.

THE COURT: Before your client signed the plea agreement, did you have a sufficient opportunity to fully discuss it with him?

MR. LUKER: I did.

THE COURT: Did your client have any questions of you concerning the meaning of the agreement or how it might operate or what its effect might be that you do not feel you were able to answer to his satisfaction?

MR. LUKER: No, ma'am. I was able to answer everything he asked.

THE COURT: Thank you, Mr. Luker.

Mr. Adamson, does the plea agreement that is on the table in front of you in writing contain everything that you are relying on at this time by way of a plea bargain or plea agreement?  In other words, is it complete?

THE DEFENDANT:  Yes, ma'am.

THE COURT: Before you signed the agreement, did you have a sufficient opportunity to discuss it with your attorney, Mr. Luker?

THE DEFENDANT: Yes, ma'am.

THE COURT: Did you have any questions of Mr. Luker regarding the meaning of the agreement or how it might operate or what its effect might be that Mr. Luker did not answer to your satisfaction?

THE DEFENDANT: No, ma'am. I had questions but he answered them for me.

THE COURT: Mr. Adamson, the plea agreement that you have entered contains language waiving some or all of your rights to appeal the sentence to be imposed. I just want you to know that under certain conditions, a defendant can waive his or her right to appeal the sentence, and that waiver may be enforceable.  However, if you believe that the waiver in your particular plea agreement is not enforceable, you can still appeal the sentence and present that theory to the appellate court.  I just want you to know that.  When you signed the plea agreement, did you understand that you were giving up some of your rights to appeal?

THE DEFENDANT: Yes, ma'am.

THE COURT: The plea agreement mentions that the government may recommend a reduction of your sentence based on your cooperation. Do you understand what the government seeks from you as cooperation?

THE DEFENDANT: Yes, ma'am.

(Doc. 429 in Case No. 1:08-cr-197-VEH-TMP, pp. 9-12). Based on the plea agreement and the colloquy, the court accepted the movant's guilty plea and adjudicated him guilty of Counts 1, 7, 8, and 9 of the superseding indictment.

Movant's sentencing was set to take place on February 20, 2009. At the beginning of the sentencing hearing, the movant acknowledged that he was aware of the government's § 851 enhancement informations and he admitted having two prior felony drug convictions as alleged in the two informations. (Doc. 430 in Case No. 1:08-cr-197-VEH-TMP, p. 4). Through counsel, movant raised two objections to the PSI Guidelines Sentencing calculation, namely that he was involved only with 500 grams of powder cocaine (not crack cocaine) and that the had a minimal or minor role in the conspiracy. After discussion, the latter objection was withdrawn and the court overruled the former objection, ruling that movant's sentence could be based on powder and crack cocaine trafficked by other members of the conspiracy during his participation in it. Based on that ruling, the court found movant's Guidelines sentencing range to be a mandatory life in prison. The government filed a motion for downward departure for substantial assistance, pursuant to U.S.S.G. § 5K1.1, and recommended that a sentence of 300 months be imposed. Upon granting the § 5K1.1 motion, the court found that the advisory Guidelines range, based on a total offense level of 34 and a criminal history category of VI, was 262 to 327 months. The court then imposed a sentence at the

low end of the range, 262 months for Count I (conspiracy) and 96 months, concurrent, for the remaining Counts 7,8, and 9 (using a communication facility in a drug crime).

Notwithstanding the appeal waiver in the plea agreement, movant appealed. New counsel, Tim Coyle, was appointed to handled the appeal. In an opinion dated February 26, 2010 (issued as mandate on March 29, 2010), the court of appeals affirmed the convictions and sentence. *United States v. Adamson*, 366 Fed. Appx. 999 (11th Cir., Feb. 26, 2010). The court rejected his arguments that his guilty plea was not a knowing and voluntary plea and that the government breached its plea agreement with him. There is no indication that movant sought *certiorari* review in the United States Supreme Court.

Movant filed the instant § 2255 motion on May 11, 2011,[3] alleging claims of ineffective assistance of both trial and appellate counsel. He contends that trial counsel misled him by advising him that, under the two sentencing options in the plea agreement, he would receive the option that resulted in the lowest sentence, and that based on this advice, he agreed to enter his guilty plea. He alleges that counsel informed him that he would receive a sentence of no more than 151 months. He alleges that had he known that it was not possible for the government to fulfill its promise to recommend a three-level reduce in the offense level for acceptance of responsibility and for him to be sentenced at the low end of the guidelines range, he would not have agreed to plead guilty.

---

[3] The court actually received the motion on May 16, 2011; however, under the "prison mailbox rule," it is deemed filed on the date he delivered it to prison officials for mailing. The Antiterrorism and Effective Death Penalty Act of 1996 amended § 2255 to add a one-year deadline for the filing of such motions. The time limit runs usually from the date the conviction becomes final upon the expiration of time to seek review. Here, movant's conviction became final upon the expiration of 90 days for seeking review in the United States Supreme Court, which was May 25, 2010, and he had until May 25, 2011, to file a § 2255 motion. Accordingly, his May 11, 2011, motion was timely filed.

Further, he contends that appellate counsel was ineffective because he failed to argue on appeal that movant's guilty plea was invalidly induced by an unfulfillable promise by the government. Separately, he also alleges that trial counsel and appellate counsel were ineffective because they, respectively, failed to object to and argue as error on appeal the trial judge's consideration of movant's prior criminal history in assessing the degree of downward departure to award him under the government's § 5K1.1 motion.  On June 10, 2011, the United States filed a motion to dismiss the § 2255 motion as being barred by movant's collateral relief waiver in the plea agreement. Movant replied to the motion.

On September 9, 2011, movant filed an "Addendum" to the § 2255 motion, contending that the government had failed to prove that it was cocaine base that he had conspired to possess with intent to distribute.  He argued that proof of that offense required the government to offer evidence that the substance involved in the conspiracy could be *chemically* identified and categorized as cocaine base, as distinct from cocaine hydrochloride, and absent such evidence, there was no factual basis for his conviction.   On October 28, 2011, the government filed its response to the "Addendum," arguing that as an amendment to the original § 2255 motion, the "Addendum" is time barred, procedurally defaulted, and barred by the appeal/collateral relief waiver in the plea agreement.  Movant filed his traverse on November 16, 2011.  The essence of his argument was the following:

> Mr. Adamson's [sic] upon counsel's advice stipulated that those were the facts that could be proven not knowing that the government could not prove at all that the substance contained a detectable amount of cocaine base and that their failure to charge a violation of § 841{a)(2) prohibited them from introducing a "Fake" or "look-a-like" substance for prosecution or plea purposes.  The Supreme Court made clear that the chemical formula for cocaine base is C[17]H[21]NO[4]. The formula

for Cocaine Hydrochloride is C[17]H[21] NO[4]HC.  The Court explained that the two forms have different solubility levels, melting points, and molecular weights.

Because no chemist was presented to, [sic] this court to determine that cocaine base was in fact the substance that triggered the higher sentencing factors in Mr. Adamson Plea hearing. There is no evidence that the government could have "proven beyond a reasonable doubt" that cocaine base (crack) was possessed by Mr. Adamson with intent to distribute an element essential to his entry of plea. [Sic].

(Doc. 15 in Case No. 1:11-cv-8022-VEH-TMP).

## II.  Discussion

For the reasons explained below, the court finds that the § 2255 motion is due to be denied and dismissed.  It is barred by the waiver of collateral relief in the movant's plea agreement, as well as being meritless.  Further, the "Addendum" is also time barred.

### A.  *Collateral Relief Waiver*

In order for a waiver of the right to appeal or to seek collateral relief to be valid under the Due Process Clause, it must constitute an "intentional relinquishment or abandonment of a known right or privilege."  *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938).  Absent sufficient support for an argument that the plea was coerced or otherwise entered without an understanding of the facts or law, the court must find that the plea was given voluntarily and knowingly.  *Id*.  In the Eleventh Circuit, appeal waivers must be addressed as part of the Rule 11 plea colloquy.  The court of appeals has said:

In *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993), we joined the other circuits that have spoken on the issue in holding that appeal waivers are valid if

knowingly and voluntarily entered.  To ensure that that was the case, we require that the district court specifically question the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, unless it is otherwise clear from the record that the defendant understood the significance of the waiver.

*United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997).

In this case, the plea agreement contains a clear and unequivocal waiver of the right to appeal and to seek § 2255 relief, except in the narrow circumstances of a sentence exceeding the statutory maximum or involving an *upward* departure from the Guidelines sentencing range.  Neither of those conditions occurred here.  Movant signed the plea agreement, and signed separately his acknowledgment of the terms of the waiver.  At the plea colloquy, the court brought the waiver to movant's attention, and he admitted that he understood that signing the plea agreement meant giving up appeal rights.  He now argues that his trial counsel told him that the waiver did not prevent him from appealing the "procedural" manner in which his sentence was determined, but there is nothing in the language of the waiver, signed and acknowledged by him, suggesting such an exception.

The court notes that on direct appeal, the court of appeals addressed the merits of movant's arguments and did not rely on the waiver to dispose of the appeal.  Nonetheless, this court finds that the waiver was valid and enforceable in the context of the instant § 2255 motion.  Although he contends that he received ineffective assistance of counsel, he does not argue that the ineffectiveness was itself counsel's advice to sign the waiver or to enter a guilty plea.  Rather, he argues that counsel was mistaken about the impact or calculation of his sentence under the terms of the plea agreement proposed by the government.  Thus, because the collateral relief waiver in the plea agreement was valid and knowingly entered into, it is enforceable, and the instant § 2255 must be dismissed as waived.

11

B. *Claims are Meritless*

Focusing first on the original § 2255 motion, movant contends that his trial attorney made two mistakes that amount to constitutionally ineffective assistance of counsel.  First, he advised movant that, of the two sentencing recommendation options presented by the plea agreement, he would be sentenced under the one producing the shortest sentence, which, movant contends, counsel told him would be 151 months as a sentence at the low end of the Guidelines range.  Second, he contends that trial counsel failed to object to the court considering movant's prior criminal history in assessing the degree to which it would downwardly depart under the government's § 5K1.1 motion.  Movant also alleges that his appellate counsel was ineffective because he failed to argue on appeal that the government breached the plea agreement and that the court abused its discretion by considering movant's prior criminal history.  Each of these claims is meritless.

a).  *Trial Counsel's Plea Advice*

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  The Court elaborated:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.  In order to show ineffectiveness of counsel, the movant must demonstrate that his attorney's performance fell below "an objective standard of reasonableness," 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  Also, in making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690. The effectiveness or ineffectiveness must be evaluated by consideration of the totality of the circumstances. *Stanley v. Zant*, 697 F.2d 955, 962 (11th Cir. 1983).  The court must remember that a defendant in a criminal case has a constitutional right only to adequate counsel; he is not entitled to the very best legal representation. *Stone v. Dugger*, 837 F.2d 1477 (11th Cir. 1988).

The second requisite element in a claim of ineffective assistance of counsel is a showing of prejudice.  Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. *See Strickland*, 466 U.S. at 687.  Prejudice means a reasonable probability that the outcome of the proceeding would have been different had the errors not occurred.

In this case, the express language of the plea agreement created two sentencing-recommendation options based on whether the defendant/movant provided "substantial assistance" to the government, not on which resulted in the lowest sentence.  If the defendant provided "substantial assistance" in the judgment of the government, it would file a § 5K1.1 motion for downward departure from the mandatory life sentence movant faced.  If, in the government's discretion, it concluded that movant had not provided "substantial assistance," it would recommend a three-level reduction from the total offense level used to calculate the Guidelines sentencing range

13

and that he be sentenced at the low end of the range.  As the plea agreement states clearly, the second option was triggered only "in the absence of 'substantial assistance' by the defendant."  In fact, the government filed a § 5K1.1 motion, which the court granted and downwardly departed to a sentence of 262 months.  Movant admitted to the court that he understood the terms of the plea agreement, and, particularly, that he understood the two recommendation options.  Movant simply could not have been misinformed about the nature of the options open to him.

To the extent that movant argues that trial counsel erroneously advised him that the Guidelines range would be 151 to 188 months and that he could expect a sentence of 151 months, miscalculations of the possible sentence are generally not sufficient to establish ineffective assistance.  As one court has said:

> Generally, counsel's erroneous predictions or estimates [of the sentence or sentencing range] do not rise to the level of deficient performance or render a plea involuntary. *Little v. Allsbrook*, 731 F.2d 238, 24 – 42 (4th Cir.1984); *Wellnitz v. Page*, 420 F.2d 935 (10th Cir.1970); *cf. United States v. Bradley*, 905 F.2d 359, 360 (11th Cir.1990) ("To the extent that [the defendant] claimed his guilty plea was based on his attorney's estimate of the sentence and offense level, the claim did not warrant withdrawal of the guilty plea where [the defendant] acknowledged to the court that he understood the possible maximum sentence for his crime to be greater than the sentence the court ultimately imposed.").

*Krecht v. United States,* 846 F. Supp. 2d 1268 (S.D. Fla. 2012).  Here, the court made clear to movant that any prior calculation of the Guidelines range was not binding on the court.  The court explained to him the following:

> THE COURT:  Do you understand that if the Court accepts your plea of guilty, all that remains is for a sentence to be imposed?
>
> THE DEFENDANT:  Yes, ma'am.

THE COURT: I am confident that your attorney has discussed with you the charges asserted in the superseding indictment and the maximum penalty that you could face. However, part of my responsibility today is to make certain that you do indeed understand the charges against you, what the government would have to prove at a trial, and the maximum possible penalty that you could face. Therefore, I want to go over each of those matters with you.

Do you understand that the maximum penalties include as to Count 1 -- now let me back up a minute. The government has filed two informations pursuant to Title 21 United States Code Section 851. These relate to previous felony convictions. One of them was filed on July 11th, 2008, and is Document 114 in the court file, and it relates to a previous state court felony conviction for drugs, specifically, unlawful possession of cocaine in the Circuit Court of Calhoun County Alabama on September 4, 1997 in case number CC96-847. The second is a supplemental information that was filed on October 8th, 2008 as Document 252, and it specifically relates to a previous federal felony conviction or drugs, specifically, a conviction on August 2nd, 20001, of the offense of aiding and abetting, possession with intent to distribute over 500 grams of a mixture and substance containing a detectable amount of cocaine hydrochloride in case number 00348.

* * *

Anyway, that is also a prior conviction for felony drug offense, and prior convictions for felony drug offenses enhance and cause to you face a more severe maximum possible penalty under all of the counts that you are facing. And the fact that there are two also results in you facing a larger penalty as to Count 1.

* * *

All right. The maximum possible penalty that you could face with these two enhancements under Count 1 is fine of not more than $8 million. The custodial maximum penalty is a mandatory life imprisonment term. Now, mandatory means the minimum is the maximum. The mandatory life presentence investigation report term is followed by supervised release term of not less than ten years. There is an assessment fee of $100. Restitution does not apply. The guidelines, although advisory, do apply. There is a denial of specific federal benefits pursuant to 21 United States Code Section 862.

As to Count 7, 8, and 9, because the second information filed related to a prior federal conviction, felony conviction for drugs, the maximum penalties for each of those counts is a fine of not more than $250,000, maximum custodial term period for each count is not more than eight years, followed by supervised release term for each term of not more than three years. There is an assessment fee of $100 for each count. Community restitution does not apply. And the guidelines, although advisory, do apply.

Mr. Adamson, do you understand the maximum penalities [sic] I have just outlined?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you also understand that in determining a sentence, the Court must consider applicable sentencing guidelines but may depart from those guidelines?

THE DEFENDANT: Say it again, please.

THE COURT: Do you understand that in determining a sentence, I have to consider the applicable sentencing guidelines, but they are not binding on me? I can impose a sentence that is different from those advisory guidelines.

THE DEFENDANT: Yes, ma'am.

THE COURT: Mr. Adamson, have you had sufficient opportunity and time to discuss the sentencing guidelines and the fact that they are not binding on the Court with your attorney?

THE DEFENDANT: Yes, ma'am.

THE COURT: Mr. Luker, have you completely discussed with and advised Mr. Adamson regarding the sentencing guidelines and the fact that they are not binding on this Court, unless of course they are statutory minimums?

MR. LUKER: Yes, ma'am.

(Doc. 429 in Case No. 1:08-cr-197-VEH-TMP, PP. 13-15). The court made plain not only the mandatory nature of the life sentence movant faced, but also that the guidelines sentencing range was not binding on the court. He understood that anything counsel told him about the sentence could be nothing more than counsel's estimate or speculation, and that there was no assurance he would be sentenced in that range. Understanding this, he proceeded with the plea.

This case is comparable to *United States v. Speight*, 454 Fed. Appx. 785 (11th Cir. 2011), in which the court of appeals rejected a claim of ineffective assistance. The court wrote:

Even if counsel was deficient in advising Speight about her trial options and potential sentence, Speight has not shown that this created prejudice. Speight argues that it was deficient for her lawyer to only tell her that she faced "a lot" of jail time, rather

16

than calculating and disclosing the mandatory minimum sentence that she faced. This may be true, but Speight did not express confusion about this issue to the court or attempt to get more information about her potential sentence. When the presentence report was issued, stating that she faced separate and consecutive mandatory-minimum sentences of 84 months, 300 months, and 300 months, she did not object to these sentences, even though she objected to other portions of the report. Furthermore, during her Rule 11 hearing she responded to the sentencing judge that she understood the penalties she faced, and "[t]here is a strong presumption that the statements made during the [plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir.1994). Because Speight has failed to demonstrate that she would not have pled guilty but for counsel's errors, we reject her ineffective assistance of counsel claim....

*United States v. Speight*, 454 Fed. App'x 785, 788 (11th Cir. 2011) cert. denied, 132 S. Ct. 2726 (U.S. 2012). The same can be said of the instant movant. When told during the plea colloquy that he faced a mandatory life sentence, he expressed no confusion and did not seek further information about sentencing. He did not object or indicate to the court that he had been told something else by counsel. He fully understood that his sentence would be based on a calculation of the Guidelines, and even then, that would not be binding on the court. He had no assurance that he would be sentenced to 151 months. Indeed, at the time he pleaded guilty, he was told he was facing life imprisonment. Even if counsel erroneously calculated the guidelines, movant suffered no prejudice because his decision to plead guilty was made knowing that, in fact, he faced a sentence of life without parole, unless the government was satisfied with his "substantial assistance" after the plea. This claim is without merit.

### b).  Appellate Counsel's Arguments on Appeal

Movant also asserts that his appellate counsel was ineffective because he did not argue on direct appeal that the government breached the plea agreement by not fully informing the court of

the extent of his cooperation with the government.  Plainly, this claim is meritless as appellate counsel did raise this argument on direct appeal, and the court of appeals rejected it.  The court of appeals stated the issues raised in the appeal, saying, "Adamson appeals, arguing that his guilty plea was not entered knowingly or voluntarily and, alternatively, that **the government breached its obligations under the terms of his plea agreement.**" [Bolding added for emphasis].  It cannot be said that counsel made an egregious professional error by failing to raise a certain argument on appeal when, in fact, he did raise the argument.

There was one issue involving an alleged breach of the plea agreement that the court of appeals refused to address because it was raised for the first time only in movant's reply brief, that is, that the plea agreement was breached when the government recommended a sentence of 300 months, rather than 262 months, which was the low end of the Guidelines range.  To the extent that movant now argues that his appellate counsel was ineffective because he failed to raise this argument earlier than in the reply brief, movant suffered no prejudice under the second prong of the *Strickland* test.  First, the plea agreement called for the government to file a § 5K1.1 motion for downward departure if the movant provided "substantial assistance" to the government.  Only if that "substantial assistance" was **not** provided would the government then recommend a three-level reduction in the total offense level for acceptance of responsibility and recommend a sentence at the low end of the range.  The record is clear that the government filed a § 5K1.1 motion and movant received a sentence that was a downward departure from the mandatory life sentence he was facing. The government fulfilled its obligations under the first option of the plea agreement and had no obligation to make a "low end" recommendation.

Furthermore, movant actually received a sentence at the low end of the range.  After the government filed its § 5K1.1 motion for downward departure, it recommended a sentence of 300 months.  Notwithstanding this recommendation, the court calculated a Guidelines range of 262 to 327 months and imposed a sentence of 262 months, the actual low end of the range.  Thus, even if it can be argued that the government breached some obligation to recommend a sentence at the low end of the range, movant suffered no harm because, in fact, he received a sentence at the low end of the calculated range.  Because he received a low-end sentence, counsel's failure to properly make this argument on appeal resulted in no prejudice to movant; therefore, counsel did not render ineffective assistance on appeal.  This claim is meritless.

### c).  *No Objection to Consideration of Prior Criminal History*

Movant also argues that both his trial and appellate counsel were constitutionally ineffective because they failed to object to the court's consideration of movant's prior criminal history when determining the extent of the downward departure to be given after granting the government's § 5K1.1 motion.  Counsel were not ineffective, however, because the court of appeals has expressly held that, in determining the *extent* of a downward departure to be given in sentencing, the court may look to all of the factors enumerated in 18 U.S.C. § 3553, including prior criminal history.  In an unpublished opinion in *United States v. Garcia*, 215 Fed. Appx. 948 (11th Cir., Jan. 31, 2007), the court of appeals dealt with the argument that the district court erred by considering the defendant's prior criminal history when determining the extent of downward departure to be given after granting the government's § 5K1.1 motion.  There, the court explained:

To assist district courts in evaluating the nature and extent of a defendant's substantial assistance, U.S.S.G. § 5K1.1 contains a list of substantial-assistance factors, which instructs courts to consider:

> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

> (3) the nature and extent of the defendant's assistance;

> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

> (5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a)(1)-(5). "In determining the extent of a substantial-assistance departure, the district court must consider the factors set forth in § 5K1.1(a)." *United States v. Martin*, 455 F.3d 1227, 1235 (11th Cir. 2006). However, the list of § 5K1.1(a) factors is not exclusive. *United States v. Crisp*, 454 F.3d 1285, 1289 (11th Cir. 2006). Nevertheless, when "a district court grants a downward departure under U.S.S.G. § 5K1.1 or reduces a sentence under Rule 35(b), the sentence reduction may be based *only on factors related to the defendant's substantial assistance*." *United States v. McVay*, 447 F.3d 1348, 1355 (11th Cir. 2006). In granting the departure, "[t]he sentencing judge must ... state the reasons for reducing a sentence under this section." U.S.S.G. Â§ 5K1.1, comment. (backg'd) (citing 18 U.S.C. § 3553(c)).

A court's decision not to grant as large a departure as is requested, however, can be based on other factors. In *Manella*, the government filed a Rule 35(b) motion based on the appellant's continuing substantial assistance. 86 F.3d at 202. At the hearing, the government argued for a reduction of 60 months, but the court only granted a reduction of 7 months. *Id.* In determining the extent of the reduction, the court considered the leniency of the original sentence imposed and the factors listed in 18 U.S.C. § 3553(a)(1) and (2), including the nature and circumstances of the offense of conviction and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. *Id.* On appeal, Manella challenged the order granting the seven-month reduction, arguing that the court misapplied Rule 35(b) when it considered factors other than his substantial assistance. *Id.* In particular, Manella contended that his substantial assistance was the sole factor that the district court could consider on a Rule 35(b)

motion, and that the court erred when it considered other factors that militated against a reduction in his case. *Id.* at 204. We rejected Manella's argument concluding that:

> A careful reading of Rule 35(b) reveals that the text does not prohibit the consideration of any factor other than the defendant's substantial assistance. The rule states that "[t]he court ... may reduce a sentence to reflect a defendant's subsequent, substantial assistance...." Under this language, the only factor that may militate *in favor of* a Rule 35(b) reduction is the defendant's substantial assistance. Nothing in the text of the rule purports to limit what factors may militate against granting a Rule 35(b) reduction. Similarly, the rule does not limit the factors that may militate in favor of granting a smaller reduction.

*Id.* (quoting Fed.R.Crim.P. 35(b)). We further noted that:

> In this case, the district court weighed several factors against Manella's substantial assistance, including the seriousness of the offense and the need for the sentence imposed to promote respect for the law and provide just punishment. The district court's consideration of these factors was based on 18 U.S.C. § 3553, which lists factors that the court is required to consider when imposing a sentence. Rule 35(b) does not prohibit the consideration of these factors in deciding to what extent a defendant's sentence should be reduced for substantial assistance.

*Id.* at 205 (footnote omitted).

Contrary to Garcia's contention otherwise, the district court did not commit any error, plain or otherwise, when it considered his non-assistance-related factors in determining the extent of the departure. *See Manella*, 86 F.3d at 204-05. As we explained in *Manella*, the district court was permitted under Rule 35(b), to consider factors, including those listed in 18 U.S.C. § 3553(a), that militated in favor of granting a smaller reduction. *Id.*

*United States v. Garcia*, 215 Fed. Appx 948, 950-51 (11th Cir. 2007)(italics in original). While the district court may not consider the facts and circumstances of a defendant's prior criminal convictions as a factor weighing in favor of a *greater* departure (i.e., as a "favorable factor"), it may consider the existence of priors as a factor militating *against* a greater downward departure. In short,

21

a district court may consider prior criminal history to the extent it operates to reduce the downward departure sought.

In this case, movant argued for a greater downward departure than even the bottom of the Guidelines range.  Although the departure ended up being greater than that requested by the government, it was not as great as that sought by the movant, and his prior criminal history was a factor in limiting the extent of the departure.  Because the district court was entitled to consider movant's prior criminal history as a *negative* factor, neither trial nor appellate counsel made an egregious professional error by failing to object or raise on appeal the court's consideration of prior criminal history as a factor restraining the extent of the downward departure.  Movant is not entitled to relief on this claim.

C. *The "Addendum" Claim*

In an "Addendum" to his original motion, filed on September 18, 2011, movant asserted the additional ground that his conviction should be vacated because the government failed to prove beyond a reasonable doubt that his offense involved "crack" cocaine, as opposed to powder cocaine. He argues that the Supreme Court has made clear that cocaine base, or crack cocaine, is not the same chemically as powder cocaine, and that the government is required to prove by chemical analysis that he possessed with intent to distribute cocaine base, not powder cocaine.  The government moves to dismiss this claim as untimely filed and meritless.

The court agrees that the claim is untimely filed and meritless.  First, under *Mayle v. Felix*, 545 U.S. 644, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005), it is clear this claim does not "relate back" to the date of the filing of the original § 2255 motion.  Being filed on September 18, 2011, this claim

came well more than one year following the date movant's conviction became final.  As indicated

above, the conviction became final on May 25, 2010, and he could file a timely § 2255 motion until

May 25, 2011.  The "Addendum" filed September 18, 2011, can be timely only if it "relates back"

to the date of the original motion.

In *Felix v. Mayle*, the Supreme Court discussed the "relation back" doctrine in the context

of *habeas* actions, acknowledging that an amendment may relate back in time to the original filing

if the amendment relates to a factual event or transaction in the original petition.  Adopting the

position espoused by the majority of circuits, the Supreme Court held that relation back can occur

only "when the claims added by amendment arise from the same core facts as the timely filed claims,

and not when the new claims depend upon events separate in 'both time and type' from the originally

raised episodes."  *Id.* at 657; *see also McLean v. United States*, 2005 WL 2172198, *1 (11th Cir.

Sept. 8, 2005).  Although the "Addendum" claim is related to the guilty plea, which is the event at

issue on the original motion, it is different in type.  Unlike the original § 2255 motion, which alleges

ineffective assistance of counsel in advising movant in relation to the plea, the "Addendum" claim

raises an entirely new factual question about whether the government had a factual basis for the plea.

This claim focuses not on the quality of advice given by counsel, but on the nature of the evidence

the government possessed.  As movant puts the claim:

> Because no chemist was presented to, [sic] the court to determine that cocaine base
> was in fact the substance that triggered the higher sentencing factors in Mr. Adamson
> Plea hearing.  There is no evidence that the government could have "proven beyond
> a reasonable doubt" that cocaine base (crack) was possessed by Mr. Adamson with
> intent to distribute an element essential to his entry of plea.

(Doc. 9 in Case No. 1:11-cv-8022-VEH-TMP, p. 4).  Because this is factually different than the ineffective assistance claims in the original motion, it does not relate back in time to the filing of the original motion.  The "Addendum" claim is untimely and due to be dismissed.

But even if timely filed, the claim is meritless.  At the plea hearing and in the plea agreement, movant expressly admitted that he was cooking and possessing cocaine base.  In light of this stipulation, the government was not required to come forward with evidence to prove the substance involved was crack rather than powder cocaine.  Movant waived his right to trial and to require the government to prove the fact that he possessed crack cocaine, and he cannot complain now that the government was not required to make that proof..  The claim is meritless as well as untimely, and due to be denied on that basis as well.


Conclusion and Recommendation

Based on the foregoing considerations, the magistrate judge RECOMMENDS that the motion pursuant to § 2255, as well as the "Addendum" to the motion, be DENIED and DISMISSED WITH PREJUDICE.

Any party may file specific written objections to this report and recommendation within fifteen (15) days from the date it is filed in the office of the Clerk.  Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal.  Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

24

The Clerk is DIRECTED to mail a copy of the foregoing to the movant.

DONE this the 13th day of August, 2012.


T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE